IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAKENA ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-3394-G-BN |
| | § | |
| SOUTHWEST AIRLINES, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Shakena Adams filed a *pro se* complaint against her former employer, Defendant Southwest Airlines, alleging that Southwest discriminated and retaliated against her in violation of federal law. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish.

The Court granted Ms. Adams leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 5, and issued a screening questionnaire to allow her to fully explain how the alleged actions by Southwest (or its employees) were illegal, *see* Dkt. No. 6. She filed a timely response to that questionnaire. *See* Dkt. No. 7.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons explained below, the Court should allow to proceed Ms. Adams's claims that she was retaliated against after she complained of racial discrimination but dismiss with prejudice all other claims she asserts in her

complaint as amended by her responses to the screening questionnaire.

## Applicable Background

In her complaint, Ms. Adams alleges that

> Southwest Airlines violated Title VII of the Civil Rights Act of 1964 when they discriminated against [her] on numerous occasions. Southwest Airlines also violated 42 U.S. Code 1981 when they retaliated against [her] for filing a complaint. Southwest Airlines wrongfully terminated [her] in retaliation and created a hostile environment causing Ms. Adams to suffer physical, emotional and economical harm.

Dkt. No. 3 at 1.

She continues:

> • Ms. Adams began working at Southwest Airlines on 12/5/2011.
> • Through the course Ms. Adams's time at Southwest Airlines she accumulated around 300 compliments for her service and work performance.
> • In fact, during the last 6 months of Ms. Adams's employment she received 81 compliments.
> • The day of Ms. Adams's termination, she was recognized as having received the Southwest Warrior Spirit award. This award was in recognition for outstanding service, displaying that of a "servant's heart" and giving 100 percent daily. This recognition was awarded from the office of Gary Kelly, the C.E.O. of Southwest Airlines.
> • Despite having received this honor, Ms. Adams was terminated that day for not getting along with her colleagues. …
> • Though the company and department have a specific process leading to a termination which includes a Letter of Instruction (Verbal Warning), Letter (Written Warning) then Termination, this process and performance plan was not followed for Ms. Adams.
> • Ms. Adams did not receive a written warning prior to being terminated, which violates the company and department's policy.
> • It is clear that Ms. Adams was negatively labeled by Southwest Airlines after making several complaints and the company sought to get rid of her.
> • Evidence of the fact that Ms. Adams was negatively labeled, can be seen in the fact that Katherine Pappas, a supervisor of Ms. Adams openly told employees in the department that she did not like Ms. Adams because of the complaints Ms. Adams had previously made. The actions of Ms. Pappas humiliated Ms. Adams and inflicted additional emotional harm.

• In fact, Ms. Adams was told on one occasion that "snitches get stitches."
• The gross negligence of Ms. Pappas in informing employees of protected complaints filed by Ms. Adams, increased the hostility felt by Ms. Adams.
• During the time in which Ms. Adams was subjected to retaliation after filing complaints regarding discriminatory remarks made towards her, she suffered a heart attack and several anxiety attacks.
• The ambulance was called in response to her having suffered a heart attack on one occasion and in response to her having suffered anxiety attacks on two occasions.
• On the day in which Ms. Adams suffered a heart attack, she was being harassed by employees in the department.
• On the days in which Ms. Adams suffered anxiety attacks, she was too being harassed by fellow colleagues
• Throughout the course of Ms. Adams's time at Southwest Airlines, she suffered extreme emotional, physical and economical harm inflicted by members of leadership and employees within her department.
• New employees were informed of the complaints filed by Ms. Adams during their New Employee Orientation and told to stay away from her.
• Upon being told of this by several new employees, Ms. Adams suffered extreme depression.
• Ms. Adams was also treated in a mental facility due to the extreme conditions she endured at Southwest
• Upon finding out that Ms. Adams had to take medication, her colleagues were allowed to make fun of the fact the fact she took medication.
• Ms. Adams was also told that she could not have her medication on her desk, despite there having been no rule or clause in the company's handbook that states as such
• It is clear that the actions of Southwest Airlines were a direct violation of Title VII of the Civil Rights Act of 1964, as she was discriminated against and ridiculed because of her race and disability status.
• The retaliatory actions of Southwest Airlines were also direct violations of the law.
• It is also clear that Southwest Airlines also violated 42 U.S. Code 1981.
• In a final attempt to retaliate against Ms. Adams she was wrongfully terminated.
• Southwest Airlines has allowed their substantial economical growth and success to make them feel that they are above the law.
• It is clear that due to their size and statue, this Southwest Airlines feels that they are permitted to treat employees in the manner detailed above, even if it violates the law.

*Id.* at 1-3.

Asked to explain the basis for her discrimination claim in the screening questionnaire, Ms. Adams responded "that management [labeled] me as a trouble maker" and provided the following facts to show that she was discriminated against:

> Katherine Pappas, Supervisor, openly told employees in the department that she did not like me because of the complaints I had previously made. I reported this to upper management. Management found that this was accurate and soon assigned me to a new Supervisor. Work environment for me became very hostile because co-workers felt it was okay to cause me distress because of Katherine Pappas.
> Although, I had been [harassed] via instant messenger, in-person, and text messages, everyone that played a part with this [harassment] was never written up and terminated. I was terminated from the company due to calling a co-worker messy bessie. In addition, in December of 2018, I was approached by another co-worker at my desk. This co-worker was beating on my desk and being very loud. I tried to get some help from a Supervisor. I later was terminated because Supervisor stated that I was too loud when calling for help yet management knew of my anxiety and hard of hearing.
> I received a letter in July 2018 which had nothing to do with company business. I received a letter of instruction because a Supervisor stated that I violated the employee handbook. There was a food situation where a co-worker and I ordered food. The co-worker did not like her food yet she wanted her food re-made and the money back. I was on the phone at my desk and the co-worker approached me telling me that she wanted her money. I told her that I was on a call. I told her that she will need to leave. She stated that she was not going anywhere. I began to repeatedly tell her to please let me assist my customer. David Bardere, Supervisor, was walking by and stated that I was loud. I ended up getting written up on a warning and the person who was [harassing] me at my desk did not get written up.
> I had several anxiety attacks and had to be transported from work to hospital by paramedics. I had a heart attack at work on 10/14/2017 and had to get a heart [catheterization]. Spent some time as an in-patient in the mental health division of Texas Presbyterian in Plano due to how I was being treated at Southwest Airlines.

Dkt. No. 7 at 3.

Through her response to the screening questionnaire, Ms. Adams further

provides that the basis for her alleged retaliation is that she

> made a complaint to Southwest Airlines Employee Relations department on 8/28/2012. The complaint was regarding an employee, Gwen Jones. Gwen Jones, called me big, fat, black, and ugly while we at work. After I made the complaint, the investigator, Monica, provided me the outcome. Monica stated that the management of the department in which Gwen and I worked, Source of Support Department, did not want to pursue disciplinary action against Gwen Jones. Monica stated that the department should not in any manner retaliate against me for making this complaint.
> After making this complaint, I was retaliated against by employees and management. I was told that I would get pulled by my hair and slung around. Someone told me that snitches get stitches. Co-workers would walk past my desk giving me mean dirty looks. I received a text message by a co-worker, stating that the reason that I wear a wig everyday is because I am bald headed. I was told that I wear the same clothes every week. Co-workers stated that they have been warned coming into the department that I am trouble and to watch out for me. Management began telling all new hires to Source of Support to watch out for me because I am a trouble maker and will report things to Human Resources.

*Id.* at 4; *see also id.* (explaining that, because of these actions, she suffered "depression and anxiety. I contacted the company's Employee Assistance Program and received counseling. My primary care physician prescribed me depression and anxiety medication.").

Ms. Adams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 3, 2018, *see* Dkt. No. 7 at 7, alleging that Southwest retaliated against her on February 1, 2018, the date that she claims she was discharged "for unprofessional [b]ehavior in the work place," because, she claims, she "was retaliated against by coworkers, whom I sent to Southwest Employee Relations about for reporting them," Dkt. No. 7-2 at 1.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

Indeed, to survive dismissal under the framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that she contends entitle her to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (a court need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); citation omitted)).

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend [her] complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded her 'best case.' A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint. [And a] plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal quotation marks omitted); *cf. Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous," "become part of the plaintiff's pleadings" (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996))).

**Analysis**

Ms. Adams alleges claims of employment discrimination and retaliation based

on race, specifically citing Title VII and Section 1981. *See* Dkt. No. 3 at 2. Her factual allegations also implicate discrimination and retaliation based on a disability, *see id.*, – those allegations could therefore raise a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

But Ms. Adams does not allege facts to support a direct case of discrimination. That is, even after she was allowed to amend her claims, she still fails to, for example, provide allegations that could ultimately allow "a reasonable jury to conclude without any inferences or presumptions that [either race or disability] was an impermissible factor in the decision to terminate" her. *Vital v. Nat'l Oilwell Varco*, Civ. A. No. H-12-1357, 2014 WL 4983485, at *18 (S.D. Tex. Sept. 30, 2014) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Proving her claims will therefore depend on the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first show a prima facie case of discrimination or retaliation before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII); *accord Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (Section 1981); *EEOC v. LHC Grp,. Inc.*, 773 F.3d 688, 694 (5th Cir. 2015) (the ADA).

Four elements are required to assert a claim – or prima facie case – of racial discrimination, whether under Title VII or Section 1981. *Cf. O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016) ("Section 1981 claims are governed by the same standards as Title VII, except that Section 1981 does not require exhaustion of

-8-

administrative remedies." (citing *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015) (per curiam))).

> [A plaintiff] (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy*, 492 F.3d at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

The prima-facie elements of a retaliation claim under either Title VII or Section 1981 are that "(1) [the plainitff] engaged in activity protected by [either statute]; (2) he was subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015) (citations omitted).

"A *prima facie* case under the ADA requires: (1) that the plaintiff has a disability; (2) that he was qualified for the job; and (3) that the employer's adverse employment decision was a result of his disability." *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam) (citing *LHC Grp.*, 773 F.3d at 694).

And, to the extent that Ms. Adams also alleges that Southwest created a hostile workplace, *see* Dkt. No. 3 at 1, that claim must also be tethered to a protected status, such as race or a disability. For example, workplace "[h]arassment is based on race if 'the complained-of conduct had a racial character or purpose.'" *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-cv-1034-D, 2017 WL 274133, at

\*4 (N.D. Tex. Jan. 20, 2017) (citation omitted). And, ultimately, a plaintiff "must demonstrate a 'connection between the allegedly harassing incidents and her protected status.'" *Id.* (citation omitted).

Regarding employment discrimination claims, the United States Court of Appeals for the Fifth Circuit has cautioned that a plaintiff need not make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510-12 (2002)). "*Raj*, however, does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." (citations omitted))).

The question for the Court now, then, is simply whether, after being allowed leave to amend her complaint, Ms. Adams has provided sufficient facts to allege that she suffered discrimination and retaliation in violation of Title VII, Section 1981, or the ADA. *See Swierkiewicz,* 534 U.S. at 512-13. And, if she "has not pled such facts," it is "proper[ to] dismiss[] her complaint." *Meadows*, 731 F. App'x at 318.

First, Ms. Adams alleges that she was retaliated against "after filing complaints regarding discriminatory remarks made towards her." Dkt. No. 3 at 2. And, in her questionnaire response, she further explains that she complained about a fellow

employee "call[ing her] big, fat, black, and ugly while" at work, Dkt. No. 7 at 4 – remarks that, at least arguably in part, have a "racial character," *Zavala*, 2017 WL 274133, at *4. She does not specifically allege that she was terminated as a result of this complaint but that her complaining led to hostility at work:

> [a]fter making this complaint, I was retaliated against by employees and management. I was told that I would get pulled by my hair and slung around. Someone told me that snitches get stitches. Co-workers would walk past my desk giving me mean dirty looks. I received a text message by a co-worker, stating that the reason that I wear a wig everyday is because I am bald headed. I was told that I wear the same clothes every week. Co-workers stated that they have been warned coming into the department that I am trouble and to watch out for me. Management began telling all new hires to Source of Support to watch out for me because I am a trouble maker and will report things to Human Resources.

*Id*.

Internal complaints regarding perceived racial discrimination may constitute a protected activity for purposes of alleging a retaliation claim. *See Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001))); *see also Walker v. Univ. of Tex. Med. Branch – Galveston*, No. 3:17-CV-00313, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018) (noting that courts in this circuit "uniformly hold that an informal complaint must reference a discriminatory practice to constitute a protected activity" (citations omitted)), *rec. adopted*, 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018); *cf. Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) ("Magic words are not required, but protected opposition must at least alert

an employer to the employee's reasonable belief that unlawful discrimination is at issue." (collecting cases)).

And, at least for purposes of screening Ms. Adams's complaint, the adverse-action prong of a retaliation claim may be shown through "a retaliatory hostile work environment," which may constitute "a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII." *Davis v. N.Y. Dep't of Corr.*, 256 F. Supp. 3d 343, 355 (S.D.N.Y. 2017) (quoting *Rasco v. BT Radianz*, No. 05-CV-7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009)). Ultimately, "a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment." *Id.* (quoting *Rasco*, 2009 WL 690986, at *15); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case.").

Ms. Adams, however, fails to identify an employee similarly-situated to her but outside of a protected class implicated by her factual allegations that replaced her or was treated more favorably than her.

And, although she vaguely asserts that she is disabled, she fails to provide facts to plausibly allege that any disability she may have is covered by the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment"); 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section."); *Marecheau v. Equal Emp't Practices Comm'n*, No. 13-CV-2440 (VEC), 2014 WL 5026142, at *6 (S.D.N.Y. Sept. 30, 2014) ("Not every illness, condition or impairment constitutes a disability within the meaning of the ADA." (citing Section 1630.2(j)(1)(ii))).

Therefore, without determining whether such claims may be subject to an affirmative defense – such as the statute of limitations – or whether they should be dismissed based on a motion made under Federal Rule of Civil Procedure 12(b)(6), the Court should allow to proceed Ms. Adams's claims, under Title VII and Section 1981, that she was retaliated against after complaining about racial discrimination.

But all other claims she makes through the complaint as amended by her questionnaire responses should be dismissed with prejudice. *See Wiggins*, 710 F. App'x at 627; *see also Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Recommendation

The Court should allow to proceed Plaintiff Shakena Adams's claims, under Title VII and 42 U.S.C. § 1981, that her former employer retaliated against her after she complained of racial discrimination but dismiss with prejudice all other claims Adams asserts in her complaint as amended by her responses to the Court's screening questionnaire.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 5, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE