IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAKENA ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-3394-G-BN |
| | § | |
| SOUTHWEST AIRLINES, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Shakena Adams's *pro se* action against her former employer, Defendant Southwest Airlines Co., has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish.

The Court granted Adams leave to proceed *in forma pauperis* and, after screening her complaint as amended by her verified answers to the Court's questionnaire, allowed to proceed her claims, under Title VII and 42 U.S.C. § 1981, that Southwest retaliated against her after she complained of racial discrimination but dismissed with prejudice all other claims she asserted. *See generally Adams v. Southwest Airlines*, No. 3:18-cv-3394-G-BN, 2019 WL 1386183 (N.D. Tex. Mar. 5, 2019), *rec. accepted*, 2019 WL 1380157 (N.D. Tex. Mar. 27, 2019) ("*Adams I*").

Adams's complaint was served. *See* Dkt. Nos. 10-13. Southwest answered. *See* Dkt. No. 14. The parties participated in discovery, sometimes with Court intervention. *See, e.g.,* Dkt. Nos. 23-30. And, prior to the dispositive motions deadline,

the Court granted Southwest leave, under Federal Rules of Civil Procedure 15(a) and 16(b)(4), to file an untimely first amended answer and affirmative defenses, *see generally Adams v. Southwest Airlines*, No. 3:18-cv-3394-G-BN, 2019 WL 6528733 (N.D. Tex. Dec. 4, 2019) ("*Adams II*").

Both Adams and Southwest then moved for summary judgment. *See* Dkt. Nos. 37, 40, 41, & 42. Adams moved for leave to amend her motion. *See* Dkt. No. 44. And both sides filed further briefing. *See* Dkt. Nos. 45-51.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant Adams's motion to amend her summary judgment motion, deny her summary judgment motion as amended, grant Southwest's motion for summary judgment, and dismiss this action with prejudice.

**Legal Standards**

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return

a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140

F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials,

speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or

defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Adams] from her burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules

suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).[1]

That said, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

**Analysis**

As the Court previously explained, Adams has not alleged

> facts to support a direct case of [retaliation]. That is, even after she was allowed to amend her claims, she still fails to, for example, provide allegations that could ultimately allow "a reasonable jury to conclude without any inferences or presumptions that [race] was an impermissible factor in [an adverse employment action]." Proving her [remaining claims of retaliation under Title VII and Section 1981] will therefore depend on the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first show a prima facie case of … retaliation before the case may proceed.

*Adams I*, 2019 WL 1386183, at *4 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII); *Morris v. Twn. of Independence*, 827 F.3d 396, 400 (5th

---

[1] *See also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

Cir. 2016) (Section 1981); citations omitted).

"In the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

> For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).
>
> Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among ... coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (citation modified); *see Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) ("*Burlington Northern*'s 'materially adverse' standard [also] governs a section 1981 retaliation claim," as *Mendoza v. Helicopter*, 548 F. App'x 127, 129-30 (5th Cir. 2013) (per curiam), "shows that the adverse action standard is an obvious consequence of our repeated command to analyze Title VII and section 1981 retaliation claims in sync."

(citation omitted)).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g., Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

Against this framework, the Court should turn back to Adams's complaint as amended to review the basis for her claims of retaliation:

> Adams alleges that she was retaliated against "after filing complaints regarding discriminatory remarks made towards her." Dkt. No. 3 at 2. And, in her questionnaire response, she further explains that she complained about a fellow employee "call[ing her] big, fat, black, and ugly while" at work, Dkt. No. 7 at 4 – remarks that, at least arguably in part, have a "racial character," *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-cv-1034-D, 2017 WL 274133, at *4 (N.D. Tex. Jan. 20, 2017) (citation omitted). She does not specifically allege that she was terminated as a result of this complaint but that her complaining led to hostility at work:
>
>> [a]fter making this complaint, I was retaliated against by employees and management. I was told that I would get pulled by my hair and slung around. Someone told me that

> snitches get stitches. Co-workers would walk past my desk giving me mean dirty looks. I received a text message by a co-worker, stating that the reason that I wear a wig everyday is because I am bald headed. I was told that I wear the same clothes every week. Co-workers stated that they have been warned coming into the department that I am trouble and to watch out for me. Management began telling all new hires to Source of Support to watch out for me because I am a trouble maker and will report things to Human Resources.

> *Id.*
>
> Internal complaints regarding perceived racial discrimination may constitute a protected activity for purposes of alleging a retaliation claim. *See Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001))); *see also Walker v. Univ. of Tex. Med. Branch – Galveston*, No. 3:17-CV-00313, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018) (noting that courts in this circuit "uniformly hold that an informal complaint must reference a discriminatory practice to constitute a protected activity" (citations omitted)), *rec. adopted*, 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018); *cf. Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." (collecting cases)).
>
> And, at least for purposes of screening [the complaint as amended], the adverse-action prong of a retaliation claim may be shown through "a retaliatory hostile work environment," which may constitute "a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII." *Davis v. N.Y. Dep't of Corr.*, 256 F. Supp. 3d 343, 355 (S.D.N.Y. 2017) (quoting *Rasco v. BT Radianz*, No. 05-CV-7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009)). Ultimately, "a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment." *Id.* (quoting *Rasco*, 2009 WL 690986, at *15); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation prima facie case.").

*Adams I*, 2019 WL 1386183, at *6 (citation modified).

Therefore, the remaining Title VII and Section 1981 claims pled in this case are only those based on Adams's allegation that she was retaliated against after she complained internally that a fellow employee directed remarks toward her that had a racial character. And, to the extent that Southwest and Adams move for summary judgment on Adams's claims and Southwest moves on its own affirmative defenses, the Court's focus must be on what Adams has pled in her complaint as amended and what Southwest has asserted in its amended answer. *See* FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."); *US Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-cv-2843-M-BN, 2013 WL 4504754, at *18 (N.D. Tex. Aug. 20, 2013) ("A party may only move for summary judgment on an affirmative defense that has been properly pleaded. *See Canal Ins. Co. v. J-Lin Trucking, Inc.*, No. 2:95CV156, 1996 WL 672107, at *2 (N.D. Miss. Sept. 4, 1996) (finding that an issue not raised in the pleadings was not a proper basis for granting summary judgment)."); *cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

With this understood, the undersigned turns to the parties' motions.

I. Southwest's motion

**A. Administrative Exhaustion Affirmative Defense**

Southwest first argues that it is entitled to summary judgment on its

affirmative defense that Adams failed to administratively exhaust her Title VII claim as to retaliatory conduct occurring more than 300 days before she filed the charge (on July 26, 2018). *See, e.g.,* Dkt. No. 41 at 22; *see also* Dkt. No. 7-2 (charge); Dkt. No. 7 at 4 (verified response to screening questionnaire, amending complaint, providing: "I made a complaint to Southwest Airlines Employee Relations department on 8/28/2012. The complaint was regarding an employee, Gwen Jones. Gwen Jones, called me big, fat, black, and ugly while we at work."); *id.* (further citing retaliatory conduct by employees that "began September of 2013" and specifically occurred on "9/27/13 … 10/13 … 8/18/14 … [and] 11/19/14").

As required, Southwest has pled this affirmative defense, in its amended answer. *See* Dkt. No. 36 at 4; *see generally Adams II*, 2019 WL 6528733; *see also Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir.) ("Failure to exhaust is an affirmative defense that should be pleaded." (citations omitted)), *aff'd*, 139 S. Ct. 1843 (2019).

While a statute's "administrative exhaustion requirement is not a jurisdictional bar to suit," *Davis*, 893 F.3d at 306 (discussing Title VII), that "does not mean that this requirement should be ignored," *id.* at 307.

> "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted. For this reason, Title VII requires administrative exhaustion.

*Id.* (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)); *compare Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) ("It is well settled that courts may not entertain claims brought under Title VII as to which

an aggrieved party has not first exhausted [her] administrative remedies by filing a charge of discrimination with the EEOC." (citations omitted)), *with Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991) ("The EEOC filing requirement functions as a statute of limitations rather than a jurisdictional prerequisite. It is a pre-condition to filing suit in district court, but it is not related to the subject matter jurisdiction of the court." (internal quotations and citation omitted)).

Title VII claims "may only be adjudicated in federal court if the plaintiff exhausted [ ] administrative remedies in a timely manner." *Brown v. Jimmons*, Civ. A. H-15-2108, 2016 WL 4570758, at *2 (S.D. Tex. Aug. 31, 2016) (citing 42 U.S.C. § 2000e-5(e)(1); *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 1994)). "[T]o exhaust administrative remedies" under Title VII, a plaintiff "must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination, or within 300 days of the alleged discrimination if he institutes his action with the appropriate state agency." *Owens v. Dallas Cnty. Cmty. College Dist.*, No. 3:16-cv-3162-L, 2017 WL 3190727, at *2 (N.D. Tex. May 16, 2017) (citation omitted), *rec. accepted*, 2017 WL 3172748 (N.D. Tex. July 26, 2017); *see also Draper v. Willis Knighton Med. Cent.*, Civ. A. No. 15-1968, 2017 WL 3711809, at *1 (W.D. La. Aug. 28, 2017) ("An employee seeking judicial relief from proscribed discriminatory employment practices must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC no more than 300 days after the alleged discriminatory employment action occurred.... A court analyzing the scope issue must

engage in a 'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.'" (quoting *Pacheco*, 448 F.3d at 789)); *cf. Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (noting that courts in this circuit interpret "what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination'" (quoting *Pacheco*, 448 F.3d at 789 (quoting, in turn, *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)))).

As Southwest asserts, the only materially adverse action specifically alleged in the charge is that Adams was terminated on February 1, 2018 "for unprofessional [b]ehavior in the work place." Dkt. No. 7-2 at 1; *see also id.* (providing February 1, 2018 as the earliest and latest date that discrimination occurred). And, without further elaboration, Adams also asserts that it is her belief that she "was retaliated against by coworkers, whom I sent to Southwest Airlines Employee Relations about for reporting them." *Id.*

But, even drawing all reasonable inferences in Adams's favor, including that her vague allegation about coworker retaliation could reasonably lead to an EEOC investigation into the Title VII retaliation claim remaining in this case (that Adams was retaliated against after she complained internally that a fellow employee directed remarks toward her that had a racial character), the acts of retaliation by fellow employees that Adams has alleged – the last of which was in November 2014,

*see* Dkt. No. 7 at 4 – all occurred more than 300 days before the charge was filed.

Southwest has therefore "established that the charge was not filed on time," and the burden shifts to Adams "to show that the limitations period was subject to equitable tolling or equitable estoppel." *McIver v. Am. Eagle Airlines, Inc.*, 413 F. App'x 772, 777 (5th Cir. 2011) (per curiam) (discussing the analogous ADEA; citing *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992); *Rhodes*, 927 F.2d at 878); *accord Sun River Energy, Inc. v. McMillan*, No. 3:13-cv-2456-D, 2014 WL 4771852, at *9 (N.D. Tex. Sept. 25, 2014) (applying *McIver* in summary judgment context, observing that, "[a]lthough defendants have the burden of establishing the affirmative defense of limitations, [the plaintiff] has the burden of proving equitable or legal tolling of the limitations period"). And, because Adams has not carried this burden, even if the Court draws all reasonable inferences in her favor, Southwest has carried its burden of showing that beyond peradventure there are no genuine and material fact disputes on its affirmative defense that the Title VII retaliation claim is barred because Adams failed to timely exhaust that claim.

Southwest is therefore entitled to summary judgment as a matter of law on its defense, requiring that the Court dismiss Adams's claim of Title VII retaliation.

**B. Limitations Affirmative Defense**

Because Adams filed this lawsuit on December 26, 2018, Southwest next argues that, at least as to events occurring prior to December 26, 2014, Adams's Section 1981 retaliation claim is barred by the provision's four-year statute of limitations. *See* Dkt. No. 41 at 23 (citing 42 U.S.C. § 1658; *Jones v. R.R. Donnelley &*

*Sons Co.*, 541 U.S. 369, 382 (2004)). Like exhaustion under Title VII,

> [b]ecause limitations is an affirmative defense for which [Southwest] will have the burden of proof at trial, to obtain summary judgment it "must establish 'beyond peradventure all of the essential elements of the ... defense.'"
>
> Under § 1981, "the relevant date for the [running] of the statute of limitations is the [l]ast date on which defendants improperly harmed plaintiffs." *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1255 (5th Cir.1979). The statute of limitations for a § 1981 claim is, at most, four years. [Southwest] may meet its summary judgment burden by establishing that no improperly harmful act occurred after December [26, 2014].

*Hughes v. Dillard, Inc.*, No. 3:09-cv-218-D, 2009 WL 4279414, at *3 (N.D. Tex. Nov. 30, 2009) (citation and footnote omitted).

As discussed above, the last alleged act of coworker retaliation occurred in November 2014. Southwest has therefore established that the Section 1981 claims are untimely. And the burden again shifts to Adams "to show that the limitations period was subject to equitable tolling or equitable estoppel." *McIver*, 413 F. App'x at 777. Because she again has not carried this burden, even if the Court draws all reasonable inferences in Adams's favor, Southwest has carried its burden of showing that beyond peradventure there are no genuine and material fact disputes on its affirmative defense that the Section 1981 retaliation claim is also time barred. Southwest is therefore entitled to summary judgment as a matter of law on its defense, requiring that the Court dismiss Adams's claim of Section 1981 retaliation.

### C. Prima Facie Case of Retaliation

Even if Southwest had not established by peradventure that it is entitled to summary judgment on its affirmative defenses and that application of those defenses requires dismissal of Adams's retaliation claims, she still has not established a prima

facie case of retaliation. She has provided no evidence to link her August 28, 2012 internal complaint following the coworker's arguably racial remarks to an adverse employment action.

Focusing first on her termination in February 2018 – more than five years after the protected activity – the two events are too far removed in time to show a causal link. *See, e.g., Scott v. Weber Aircraft*, 609 F. App'x 788, 792 (5th Cir. 2015) (per curiam) (affirming district court's finding that the plaintiff "failed to establish a *prima facie* case of retaliation because he did not show a causal link between protected activity and his termination. The only events that might qualify as 'protected activity' are Scott's reports regarding the noose and the offensive publication. The first report occurred five years prior to Scott's termination and the second report occurred over one year prior to Scott's termination."); *see also Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 329 (5th Cir. 2013) (per curiam) ("Absent more of an explanation for how her October 2009 complaint caused her July 2010 termination, the nine-month gap between the two events negates any inference of a causal link. Rodriquez thus fails to establish a prima facie case for retaliation." (footnote omitted)).

And Adams has failed to show that the remaining adverse employment actions (the alleged acts of retaliation by her coworkers) were materially adverse and not just "petty slights, minor annoyances, [or] simple lack of good manners." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

For these reasons alone, the Court should grant Southwest's motion for

summary judgment on Adams's retaliation claims.

II. Adams's motions

First, Adams's motion to amend her motion for summary judgment does not materially alter the substantive motion. Adams only seeks leave to add a citation to Rule 56(c). *See* Dkt. No. 44 at 1. The Court should therefore grant the motion for leave and consider Adams's motion for summary judgment as amended. But, for the reasons explained above, Adams's summary judgment motion as amended is "insufficient under 'the heavy "beyond peradventure" standard to obtain summary judgment on'" her claims. *Cont'l Cas. Co.*, 2007 WL 2403656, at *10 (citation omitted).

**Recommendation**

The Court should grant Plaintiff Shakena Adams's motion to amend her summary judgment motion [Dkt. No. 44], deny her summary judgment motion as amended [Dkt. No. 37], grant Defendant Southwest Airlines Co.'s motion for summary judgment [Dkt. No. 40], and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 16, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE